**VEMCO, INC., Petitioner/Cross–Respondent,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent/Cross–Petitioner.**

Nos. 94–6378, 94–6500.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 29, 1996.

Decided March 22, 1996.

Peter J. Kok and Elizabeth M. McIntyre (argued and briefed), Miller, Johnson, Snell & Cumminskey, Grand Rapids, MI, for Petitioner/Cross-Respondent.

Joseph Oertel (argued), Aileen A. Armstrong, Deputy Asso. Gen. Counsel, Charles P. Donnelly, Jr. (briefed), National Labor Relations Board, Appellate Court Branch, Washington, DC, for Respondent/Cross-Petioner.

Before JONES, NORRIS, and MOORE, Circuit Judges.

ALAN E. NORRIS, Circuit Judge.

Vemco, Inc., petitions this court to set aside an order of the National Labor Relations Board (the "Board") that affirmed the decision of the administrative law judge (the "ALJ") who determined that the company had violated § 8(a) of the National Labor Relations Act, 29 U.S.C. § 158(a) (1988) (the "NLRA"), in two respects: (1) by instituting an overly broad rule restricting the distribution of union materials and (2) by disciplining a group of employees who left a job site because of allegedly unsafe working conditions. The Board seeks enforcement of its order. For the reasons outlined below, we set aside the Board's order on both issues.[1]

## I.

*No–Distribution Rule*

■ Section 10(b) of the NLRA provides that a person charging an unfair labor prac-

tice must do so within six months of the alleged infraction. 29 U.S.C. § 160(b). In the proceedings below, the ALJ rejected an argument advanced by Vemco that the six-month window for bringing unfair labor charges precluded review of the allegation concerning its policy governing the distribution of union material.

■ We recognize that the date upon which the alleged violation of the NLRA occurred represents a factual finding and, as such, is conclusive "if supported by substantial evidence on the record considered as a whole." 29 U.S.C. § 160(e); *NLRB v. Mead Corp.*, 73 F.3d 74, 78 (6th Cir.1996). This court may not supplant a finding merely by identifying an alternative conclusion that could be supported by substantial evidence. *Arkansas v. Oklahoma*, 503 U.S. 91, 113, 112 S.Ct. 1046, 1060, 117 L.Ed.2d 239 (1992). Nonetheless, a reviewing court serves as more than a rubber stamp for agency determinations, even when credibility assessments are at issue. *YHA, Inc. v. NLRB*, 2 F.3d 168, 172 (6th Cir.1993) (citing *Krispy Kreme Doughnut Corp. v. NLRB*, 732 F.2d 1288, 1290 (6th Cir.1984)). Where, as here, witnesses' versions of events are at odds, we must examine credibility determinations with care. *Id.* This is particularly necessary where, as here, the factfinder has not provided a reason for a credibility assessment and the record, viewed as a whole, strongly supports an alternative conclusion.

Anna McMurtry worked in Vemco's assembly department. According to her testimony, she handed out copies of a document related to the certification of the United Auto Workers in the locker area of the company. She also placed copies in the break room. As a result of her actions, she was called to the office of David Maxwell, Vemco's human resources manager, who told her that she could not hand out the documents on company property.[2]

---

1. In light of our disposition, we need not reach Vemco's allegation that the ALJ exhibited improper bias.

2. Maxwell recalled saying, "I explained to her that it was company policy not to distribute something like this on company time and in a company work area and that she should be aware of that." McMurtry's testimony essential-

McMurtry testified that this exchange occurred on December 6, 1991; Maxwell testified that it took place on November 20. In addition to this testimony, the ALJ also considered a contemporaneous note[3] of the conversation made by Maxwell and dated November 20. The date is critical because it determines whether McMurtry's subsequent charge of an unfair labor practice complied with the six-month period imposed by § 10(b).

The ALJ elected to credit McMurtry's testimony as to the December 6 date without addressing the substantial evidence favoring November 20. Furthermore, the ALJ cited Maxwell's note to corroborate the substance of the exchange with McMurtry and yet chose to discount its date. During her testimony McMurtry conceded that she had lied to Maxwell with respect to her conduct. While she was not under oath at the time, past instances of untruthfulness are relevant in assessing a witness' credibility. Nonetheless, the Board chose to affirm the ALJ's factual finding in these terms:

In adopting the judge's crediting employee Anna McMurtry's testimony that she was directed not to distribute copies of the November 13, 1991 Certification of Representative on company property on December 6, 1991, we have carefully reviewed the record, including the memorandum prepared by Human Resources Manager David Maxwell dated November 20, 1991, and find that the Respondent's evidence is insufficient to overcome the judge's credibility resolution in light of other evidence supporting that finding,

ly tracks that of Maxwell, except that she remembered him telling her to "take heed" if she passed out such literature.

3. The note reads in full:
RE: *Anna McMurtry*
Witnesses saw Anna distributing NLRB certification of representative letter (dated Nov 13, 1991).
M Austin and I asked her if this was true. She denied that she did this.
Further explained that this action is not acceptable and will not be tolerated for future reference.
She agreed.
End of discussion.
Dave Maxwell
11/20/91

particularly McMurtry's consistent position that these events took place on December 6.

■ We disagree with the Board, since the record evidence cannot be said to lend itself to a "credibility resolution." The record as a whole does not include substantial evidence in support of both sides to the date controversy. If each side were supported by substantial evidence, then we would be obliged to affirm the factual finding of the ALJ and the Board in this matter. *YHA*, 2 F.3d at 172. However, in view of McMurtry's virtually unsupported testimony, the existence of a contemporaneous note of the conversation, the authenticity of which has not been called into doubt, and McMurtry's acknowledgement of untruthfulness, it is inescapable that substantial evidence supports the existence of only one factual scenario: that the incident occurred on November 20, 1991.[4]

Accordingly, the charge of an unfair labor practice stemming from this incident is barred by § 160(b).[5]

## II.

### Disciplinary Action after Walkout

The second issue presented for review concerns disciplinary action taken by Vemco against several employees after they left a job site in the early morning hours of Monday, April 20, 1992. The previous Friday happened to be Good Friday, a company holiday on which operations at the plant ceased. When the employees who were dis-

4. Although the Board alludes to "other evidence supporting [the ALJ's] finding," it does not give any indication what, precisely, this "other evidence" includes. Our review of the record reveals only McMurtry's testimony, which, standing alone, we find to be insufficient to support the finding. The testimony of employee Tracy Sergen regarding McMurtry's pro-union activities is equivocal at best.

5. The ALJ provided an alternative reason that this charge survived even if the November 20 date were selected. However, the Board found it "unnecessary to pass on the judge's alternative finding" and the issue has not been briefed by the NLRB. Accordingly, it is not properly before us on appeal.

ciplined arrived for work as scheduled at 5 a.m. on Monday, they found that the work area was inaccessible because racks, boxes, and other items from the adjacent area had been moved into it so that work crews could take advantage of the long weekend to paint the floor.

Finding themselves unable to work, the group considered what to do. The ALJ found that Kimberly Lucas, who was filling in as temporary spokesperson for the group, "led the discussion and was effectively in charge of what occurred." Although he discounted much of her testimony, the ALJ decided to "credit testimony to the effect that it was impossible to work, that the area was unsafe, and that employees should all go home." Eventually, nine employees left the plant. After a company inquiry, each was disciplined for this decision.[6]

■■■ For the purposes of analysis, we shall assume, as did the ALJ, that it was "literally impossible" for these employees to do their assigned jobs when they arrived at work on April 20. Section 7 of the NLRA grants employees the right to engage in "concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157; *Manimark Corp. v. NLRB*, 7 F.3d 547, 549 (6th Cir. 1993). It is an unfair labor practice to interfere with this right. Before we can find an employer in violation of this provision, it must be established that the action taken by the employees was both concerted and protected in the sense that they were acting for the purpose of collective bargaining or other mutual aid. In addition, the Board must show "that the employer knew of the activity and its concerted nature, and that the employee's protected activity was a motivating factor prompting some adverse action by the employer." *Manimark*, 7 F.3d at 550 (quoting *Ajax Paving Indus., Inc. v. NLRB*, 713 F.2d 1214, 1216 (6th Cir.1983)).

■■■ While we agree with the ALJ that the action taken in this case was concerted, we cannot accept his conclusion that it constituted protected activity, which this circuit has defined in the following terms: "Protect-

ed activity must in some fashion involve employees' relations with their employer and thus constitute a manifestation of a 'labor dispute.' " *NLRB v. Leslie Metal Arts Co.*, 509 F.2d 811, 813 (6th Cir.1975). The NLRA defines a labor dispute as "any controversy concerning terms, tenure or conditions of employment." 29 U.S.C. § 152(9). Because this definition is broad, employee interests must "bear a reasonably significant impact upon working conditions or some material incident of the employment relationship." *Leslie Metal Arts*, 509 F.2d at 813 (quoting *G & W Elec. Specialty Co. v. NLRB*, 360 F.2d 873, 877 (7th Cir.1966)).

While the work area was in temporary disarray, none of the disciplined employees were required to work under those conditions. As the ALJ noted, working under those conditions would have been "literally impossible." Thus, these circumstances are distinguishable from those that faced the Supreme Court in *NLRB v. Washington Aluminum Co.*, 370 U.S. 9, 82 S.Ct. 1099, 8 L.Ed.2d 298 (1962), where employees chose to leave work rather than suffer from miserably cold conditions. As the Court made clear, the NLRA protects an unauthorized walkout "by employees for the purpose of trying to protect themselves from working conditions as uncomfortable as the testimony and Board findings showed them to be." *Id.* at 17, 82 S.Ct. at 1104. By contrast, the Vemco employees were not required to work until the area was cleared, a task that one witness testified would require about an hour. Nor is there any evidence that the disciplined individuals sought to effect a change in company policy. As the Court of Appeals for the Second Circuit has held, for an *ad hoc* walkout to fall within the protection afforded by the NLRA, "some articulation of goals to which an employer can respond" is required. *NLRB v. Marsden*, 701 F.2d 238, 242 (2d Cir.1983). In sum, the decision to leave the work place without permission does not constitute "protected activity" where, as here, the employees were not required to work under the prevailing conditions, were paid for the time when they were

---

6. Four of the nine were temporary employees.

present but unable to work, and did not walk out to protest any company policy.

### III.

For the foregoing reasons, the order of the National Labor Relations Board is **set aside.**