**ARROW ELECTRIC COMPANY, INC., Petitioner/Cross–Respondent,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent/Cross–Petitioner.**

Nos. 97–5734, 97–5951.

United States Court of Appeals, Sixth Circuit.

Argued July 31, 1998.

Decided Aug. 19, 1998.*

---

**11.** *Id.* at 1005.

**12.** *Id.* (*quoting Cajun Elec. Power Co-op., Inc. v. Gulf States Utilities, Inc.*, 940 F.2d 117, 120 (5th Cir.1991)).

**13.** *Id.*

* This decision was originally issued as an "unpublished decision" filed on August 19, 1998. On September 10, 1998, the court designated the opinion as one recommended for full-text publication.

Robert J. Schumacher (argued and briefed), Schumacher & Booker, Louisville, KY, for Petitioner/Cross–Respondent.

Aileen A. Armstrong (briefed), Dep. Asso. Gen. Counsel, Frederick C. Havard (briefed), Sonya Spielberg (argued and briefed), National Labor Relations Board, Washington, DC, for Respondent/Cross–Petitioner.

Before: JONES, RYAN, and MOORE, Circuit Judges.

## OPINION

MOORE, Circuit Judge.

Arrow Electric Company, Inc. ("Arrow"), the Petitioner and Cross–Respondent in this action, seeks review of a decision and order of the National Labor Relations Board (the "Board") finding that Arrow violated the Na-

tional Labor Relations Act ("NLRA" or the "Act") by discharging four employees who walked off the job to protest the actions and attitude of their supervisor. The Board cross-petitions for enforcement of its order. Arrow claims that the walkout is not protected activity under § 7 of the NLRA, which provides employees with the right to engage in concerted activity for certain purposes; and alternatively, that the employees were not discharged for the protected activity in violation of § 8(a)(1) of the Act, which prohibits interference with the above rights, but instead for violating established company policy by leaving work. Because substantial evidence supports the Board's finding that Arrow terminated these four employees in response to the walkout in violation of the NLRA, we **DENY** Arrow's petition and **ENFORCE** the Board's order.

## I

The essential facts, as found by the administrative law judge (the "ALJ") and adopted by the Board, are not in dispute. Robert Franklin, Kathleen Jackson, Kevin Simms, and Evan Grider were fired by Arrow Electric Company on February 27, 1996. In the weeks preceding their termination, these four employees had significant problems with one of their supervisors, Sonny Collins. When present at the job site, Collins supervised their assigned project, which involved installing electrical work and mounting televisions at a high school. In the more common case of Collins's absence, Robert Franklin supervised. The Field Supervisor for the project, Donald Jeffries, held two meetings in mid-February with the four employees in order to air their grievances about Collins. Collins himself attended only the second meeting. The complaints centered around Collins's belligerent attitude, his disrespectful and demeaning words to the employees, and specific instances of threatening to hold over a paycheck and "sneaking around" the site to eye the employees and comment negatively on how they were doing their jobs. Collins apologized for his conduct in this meeting and pledged to "do better," and Jeffries told the employees to come to him if there were any more problems.

The next week, the problems resurfaced. Collins and Franklin spent half of the shift on February 22 in an argument about which mounting device to use for the televisions. The following day Collins arrived about an hour into the shift, abruptly reassigned Jackson and Simms, told Grider to perform a job alone that Grider considered safe only with two people, and informed Franklin in writing (refusing to speak to Franklin directly) to mount the televisions Collins's way. Cognizant of Jeffries's statement that they should come to him with future problems, the employees decided to contact him. Their attempts to reach him by radio, phone, and pager were unsuccessful, so they finally left the work site and drove to the shop. There, after discovering that Jeffries was not present, the employees each met individually with Arrow's personnel director, Jessica Thompson, and her supervisor. Each employee explained the problems they were having with Collins and the impact this was having on their productivity, stating that they could not return to the site if Collins remained in charge. Thompson told them to return to the shop on Monday morning, at which time they filled out individual questionnaires about the events on Friday, February 23. On Tuesday, February 27, they were each given termination letters, which categorized "leaving the jobsite without notice" on Friday, February 23, as "Neglect of Duty" under company rules, subjecting them to termination. J.A. at 120–46 (Gen. Couns. Ex. 8–15, Questionnaires and Termination Letters).

There were two issues before the ALJ: whether the actions of the four employees were protected under § 7 of the Act, and if so, whether the employees were discharged due to their exercise of these rights in violation of § 8 of the Act. Because the ALJ determined that the walkout was designed to remedy the negative impact of Collins's behavior on the working conditions and productivity of these employees, he found the actions to be protected. Further, he found as undisputed fact that Arrow was aware of these actions and that they resulted in the termination of the employees. Thus, because Arrow did not establish that it would have taken the same action had the employees not walked out and did not offer a separate reason for the discharges, the ALJ found the discharges to be in violation of § 8(a)(1) of the NLRA.

## II

■ The Board affirmed the findings and conclusions of the ALJ and adopted his recommended order with minor modifications on June 13, 1997. J.A. at 4–8 (Board Decision). The standard of review for Board determinations is deferential. The Board's interpretation of the NLRA is subject to the *Chevron* test.[1] *See Holly Farms Corp. v. NLRB*, 517 U.S. 392, 398–99, 116 S.Ct. 1396, 134 L.Ed.2d 593 (1996); *see also NLRB v. Webcor Packaging, Inc.*, 118 F.3d 1115, 1119 (6th Cir. 1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 1035, 140 L.Ed.2d 102 (1998). The Act itself requires a "substantial evidence" test on fact issues.[2] In addition, this court has held that "[t]he Board's application of the law to the facts is also reviewed under the substantial evidence standard, and the Board's reasonable inferences may not be displaced on review." *NLRB v. U.S. Postal Serv.*, 841 F.2d 141, 144 (6th Cir.1988) (citing *NLRB v. United Ins. Co.*, 390 U.S. 254, 260, 88 S.Ct. 988, 19 L.Ed.2d 1083 (1968)).

### A

■ Section 7 of the National Labor Relations Act (29 U.S.C. § 157) provides in relevant part that "[e]mployees shall have the right … to engage in … concerted activities for the purpose of collective bargaining or other mutual aid or protection," and § 8(a)(1) of the Act defines employer interference, restraint, or coercion of employees in the exercise of these rights as an unfair labor practice. *See* 29 U.S.C. § 158(a)(1). The National Labor Relations Board is vested with power to prevent unfair labor practices and remedy violations of the Act in § 10 (29 U.S.C. § 160), and this court has jurisdiction over appeal of the matter pursuant to § 10(e) and (f) of the Act, 29 U.S.C. § 160(e) and (f).

Arrow does not dispute the finding of "concerted" action by the employees.[3] Petitioner Arrow's main objection is to the ALJ's (and subsequently the Board's) determination that the actions of the employees were protected under the Act. For this position, Arrow cites only *Vemco, Inc. v. NLRB*, 79 F.3d 526 (6th Cir.1996), a case in which this court held a walkout by employees to be concerted activity but not protected by the Act. We relied in *Vemco* on an earlier case, *NLRB v. Leslie Metal Arts Co.*, 509 F.2d 811 (6th Cir.1975), to define "protected activity." In the *Leslie* court's words:

> [A]ll concerted activity is not protected under Section 7. Protected activity must in some fashion involve employees' relations with their employer and thus constitute a manifestation of a 'labor dispute.' Section 2(9) of the Act [29 U.S.C. § 152(9)] defines a 'labor dispute' as '… any controversy concerning terms, tenure, or conditions of employment …' *See e.g., NLRB v. Washington Aluminum Co.*, 370 U.S. 9, 82 S.Ct. 1099, 8 L.Ed.2d 298 (1962).

*Id.* at 813. In *Leslie*, however, the court went on to enforce the Board's order, which had found the walkout at issue to be protected activity. Although there was personal animosity between the employees who walked out and another employee, "[the employees] could legitimately protest by concerted activity the failure of the employer to take appropriate action to correct or alleviate the situation," which involved harassment and threats to safety by the problem employee. *Id.* at 814. Unlike the employees in *Leslie* or those at Arrow, the *Vemco* employees, upset because their work space was in disarray, walked out without articulating their concerns to anyone, without seeking "to effect a change in company policy," and despite the fact that they were not *required* to

---

1. *Chevron* provides that if the meaning of a statute is plain both the agency and the courts must give effect to that clear expression of congressional intent, and it requires the courts to accept the agency's reasonable interpretations of any ambiguous provisions of the statute. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

2. *See* 29 U.S.C. § 160(e) ("The findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive.") and § 160(f) (same); *see also Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–91, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

3. *See* Pet'r Br. at 15 ("It is established for the purposes of this case that concerted activity existed on the part of the four dischargees.")

work under the circumstances that faced them. *Vemco,* 79 F.3d at 530.

So while it is true that concerted activity can be unprotected, here the Board found, and substantial evidence in the record supports, that the activities of the Arrow employees were both concerted and protected. The ALJ found that "Collins' rude, belligerent and overbearing behavior ... directly impacted the employees' jobs and their ability to perform them; consequently, their group action in bringing their concerns to management and seeking removal of Collins as their supervisor was protected activity." J.A. at 14 (ALJ Decision at 4). The connection between Collins's behavior and the "terms and conditions" of their employment was made before, during, and after the walkout. The two previous meetings held with Donald Jeffries, the walkout and trip to the shop on February 23, and the questionnaires filled out on February 26 all revealed difficulties with Collins, productivity concerns, and some safety issues.[4]

The Supreme Court has held that a walkout by machine shop employees to protest the cold temperature of the shop, even without their making a specific demand on the employer to remedy the condition at that time, is protected by § 7 of the Act. *See NLRB v. Washington Aluminum Co.,* 370 U.S. 9, 82 S.Ct. 1099, 8 L.Ed.2d 298 (1962). This court has likewise held walkouts by employees to protest job conditions to be protected activity. *See, e.g., Vic Tanny Int'l, Inc. v. NLRB,* 622 F.2d 237 (6th Cir.1980) (unlawful discharge of health spa employees due in part to walkout over changed terms of employment); *NLRB v. C.J. Krehbiel Co.,* 593 F.2d 262 (6th Cir.1979) (print shop employees unlawfully discharged due to walkout over unfair treatment in job assignments). We have also held discontent over the ap-

pointment of a foreman to be protected under the Act and discharge on that basis to be sanctionable. *See NLRB v. Guernsey–Muskingum Elec. Coop., Inc.,* 285 F.2d 8 (6th Cir.1960).

In similar fashion, the concerted efforts of the Arrow employees on more than one occasion to bring to the attention of management their ongoing problems with Collins are activities protected by the Act. The employees were reasonable in choosing to drive to the shop in order to find someone to talk to, given yet another confrontation with Collins and their failed attempts to reach Jeffries by other means.

**B**

Arrow also contends that if the actions of the employees were protected, the employees were not fired for those protected actions, but for violating an established work rule. In employer motivation cases, the trier of fact employs the test outlined by the Board in *Wright Line,* 251 NLRB 1083, 1980 WL 12312 (1980), *enforced,* 662 F.2d 899 (1st Cir.1981), *cert. denied,* 455 U.S. 989, 102 S.Ct. 1612, 71 L.Ed.2d 848 (1982). This test, approved by the Supreme Court in *NLRB v. Transportation Management Corp.,* 462 U.S. 393, 103 S.Ct. 2469, 76 L.Ed.2d 667 (1983),[5] requires the general counsel of the NLRB to make a showing sufficient to support the inference that the protected conduct was a motivating factor in the employer's decision. At that point, the burden shifts to the employer to establish that the adverse action would have taken place in the absence of the protected conduct, in the nature of an affirmative defense. *See Wright Line; see also, e.g., NLRB v. Taylor Mach. Prods., Inc.,* 136 F.3d 507, 514 (6th Cir.1998); *Opportunity Homes, Inc. v. NLRB,* 101 F.3d 1515, 1518 (6th Cir.1996).

4. ALJ Scully, uniquely positioned to make credibility determinations, found "[t]he employees' testimony about these meetings ... credible and essentially uncontradicted." J.A. at 12 (ALJ Decision at 2). He added that he did not credit Jeffries's notes or testimony to the limited extent that they differed from that of the employees. J.A. at 12 (ALJ Decision at 2, n.3).

5. In *Department of Labor v. Greenwich Collieries,* 512 U.S. 267, 276–78, 114 S.Ct. 2251, 129 L.Ed.2d 221 (1994), the Supreme Court rejected a footnote in *Transportation Management* con-

struing § 7(c) of the Administrative Procedure Act, 5 U.S.C. § 556(d), that involved the burden of proof in administrative proceedings. *Greenwich Collieries* clarifies that at all times the ultimate burden of persuasion rests with the proponent of the rule or order. However, once the proponent has persuaded the adjudicator of a discriminatory motive for the adverse action, the employer bears the burden of persuasion as to its affirmative defense (here, that the action would have been taken in the absence of the protected conduct).

The ALJ found that the walkout on February 23 was the reason for the employee discharges, and this finding is supported by the termination letters themselves, which cite "leaving the jobsite without notice" in the walkout on February 23 as explanation, and by the testimony of Jeffries that he recommended the employees be let go for walking off the job. J.A. at 178 (Jeffries Test.). The Board also adopted the ALJ's finding that the company did not offer evidence that the employees would have been fired in the absence of the walkout (i.e., for "neglect of duty"). The employees left the job site before the end of their shift in order to protest the conduct of Collins, and this action was protected by § 7 of the Act, as explained above. Thus, Arrow's effort to distinguish between the protected walkout and "neglect of duty" as reasons for the dismissals was characterized as a "distinction without a difference" by ALJ Scully, and he reasonably found it unsupported by the evidence. J.A. at 15 (ALJ Decision at 5).

### III

For the reasons expressed above, we **DENY** the Company's petition and **ENFORCE** the Board's order.