NOT RECOMMENDED FOR PUBLICATION
File Name: 19a0015n.06

Nos. 18-1685/1706

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jan 14, 2019
DEBORAH S. HUNT, Clerk

AIRGAS USA, LLC,

    Petitioner/Cross-Respondent,

v.

NATIONAL LABOR RELATIONS BOARD,

    Respondent/Cross-Petitioner.

)
)
)
)
)
)
)
)
)
)
)

ON PETITION FOR REVIEW
AND CROSS-APPLICATION
FOR ENFORCEMENT OF AN
ORDER OF THE NATIONAL
LABOR RELATIONS BOARD

OPINION

BEFORE:    GIBBONS, ROGERS, and STRANCH, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.**  Steven Wayne Rottinghouse, Jr., filed charges alleging unfair labor practices by his employer, Airgas USA. He claims that because he filed those charges, managers of the plant where he worked discriminated against him by denying him $337 in holiday pay in violation of § 8(a)(4) of the National Labor Relations Act (NLRA or the Act), 29 U.S.C. § 158(a)(4). An administrative law judge (ALJ) agreed, concluding that statements by Airgas managers evidenced animus against Rottinghouse's charge-filing activity and that Airgas's proffered justification for the denial of pay was pretextual. The National Labor Relations Board (NLRB or the Board) affirmed and adopted the order. Airgas petitions for review of that decision, and the General Counsel of the Board cross-petitions for enforcement of the order on Rottinghouse's behalf. Because the Board's conclusions were supported by substantial evidence,

we **GRANT** the General Counsel's application for enforcement and **DENY** Airgas's petition for review.

## I.   BACKGROUND

Rottinghouse began working as a driver at Airgas's Cincinnati plant in September 2010. Beginning in 2013, Rottinghouse filed sequential charges with the NLRB, first alleging unfair labor practices at the plant and then describing management retaliation against him for pursuing those charges.  The instance of alleged retaliation at issue here involves the 2016 Thanksgiving holiday—normally a two-day paid holiday under the terms of the Collective Bargaining Agreement (CBA).

During his shift on November 22, the Tuesday before Thanksgiving, Rottinghouse learned that his uncle, his stepfather's brother, had died.  He told his supervisor, Todd Allender, about the death and that he would keep Allender informed.  That night, Rottinghouse and his family decided to clean out his deceased uncle's apartment the next day to avoid paying December rent.  Late Tuesday evening, Rottinghouse left Allender a voicemail message stating that he would take a personal day the next day, the Wednesday before Thanksgiving.  The CBA provides for five paid personal days per year, which an employee may use by "call[ing] in at least one hour prior to the start of his shift."  There is no dispute that Rottinghouse made his request in a timely fashion and in the correct manner.  That Saturday, Rottinghouse learned that the memorial service had been scheduled for Monday and left another voicemail message with Allender, this time stating that he would take a bereavement day on Monday.  The CBA allows for one day of bereavement leave (also called "funeral leave") upon the death of a family member not listed in the company bereavement leave policy, such as aunts and uncles.

About two weeks later, Rottinghouse learned that he had not been paid for the two-day Thanksgiving holiday or the bereavement day.  Concerned, he located Clyde Froslear, the

operations manager who oversees the Cincinnati plant and certain other Airgas facilities. According to Rottinghouse, when he asked Froslear about the missing holiday pay, Froslear "very vaguely, kind of like he didn't know what was going on, said [that Rottinghouse] didn't work the day before, or something like that." Rottinghouse then brought his concern to Dave Luehrmann, who oversees payroll. Luehrmann is the highest ranking employee who is permanently stationed at the Cincinnati plant; he falls between Allender and Froslear in the management hierarchy. When Luehrmann stood by the decision not to pay Rottinghouse for the holiday, Rottinghouse filed a set of grievances and a charge with the NLRB.

A few days later, Rottinghouse and the union steward met with Froslear, Luehrmann, and an Airgas vice president. The managers decided that Rottinghouse should have been paid for the bereavement day but not for the two-day Thanksgiving holiday. Froslear explained that Rottinghouse had not received holiday pay because he did not work the day before the holiday. Froslear cited the CBA provision regarding pay for scheduled holidays, which states that an employee "must work the regularly scheduled work day[s] that immediately precede and follow the holiday, except in cases of proven illness or injury substantiated by a doctor's statement." Rottinghouse responded that the company's "past practice" has been to pay employees who use a personal day before a holiday, giving several examples. Froslear did not budge.

Meanwhile, Rottinghouse's charge with the NLRB remained pending. During his testimony before the ALJ about the matter, he described two other interactions with management during which Froslear commented on NLRB charges filed against Airgas. First, in April 2015, Froslear came to a regular morning safety meeting attended by Rottinghouse and other employees and announced that, going forward, employees would receive write-ups, rather than verbal warnings, for minor infractions such as taking too long at breaks. Froslear explained that Airgas's

corporate headquarters had requested this new policy "because there [were] NLRB charges." Although Rottinghouse was not mentioned by name, he had recently filed a charge with the Board. Second, in January 2017, Rottinghouse met with Froslear, Luehrmann, and the union steward because he had called out for a personal day 45 minutes before his shift began, thereby providing less than the hour of notice specified in the CBA. Rottinghouse was frustrated and asked why his supervisors never talked to him about what was going on before issuing written discipline. Froslear responded, "it's not like you've ever come and talked to us before you filed all these NLRB charges."

After considering these statements by Froslear and evidence showing that other employees were not denied holiday pay for taking personal days adjacent to a paid holiday, the ALJ concluded that Airgas's "denial of holiday pay for Rottinghouse was in retaliation [for] his activity in filing charges with the Board and violated Section 8(a)(4) of the Act," and ordered Airgas to pay Rottinghouse the $337 he was owed for the two-day holiday. The NLRB affirmed the ALJ's ruling and adopted the order with minor corrections. Airgas petitions for review, and the General Counsel cross-applies for enforcement of the Board's order.

## II. ANALYSIS

On appeal, Airgas argues that the Board erroneously found that it violated § 8(a)(4) of the NLRA. Airgas contends that it withheld pay from Rottinghouse not in retaliation for his charge-filing activity but rather because he did not work the day immediately preceding the holiday, as the plant's CBA requires.

Section 8(a)(4) of the NLRA provides that it is an unfair labor practice for an employer "to discharge or otherwise discriminate against an employee because he has filed charges or given testimony under" the Act. 29 U.S.C. § 158(a)(4). This anti-retaliation provision is central to the purposes of the NLRA because, without some protection for employees attempting to access the

Act's protections, the Board cannot "assure an effective administration of the Act." *In re Briggs Mfg. Co.*, 75 N.L.R.B. 569, 571 (1947).

### A.     Standard of Review

Both the ALJ and the NLRB concluded that Airgas's failure to pay Rottinghouse for the two-day Thanksgiving holiday was discrimination in violation of § 8(a)(4). Our review of that decision is limited. "Pursuant to 29 U.S.C. § 160(e), this court reviews the factual determinations made by the NLRB under the substantial evidence standard." *NLRB v. Local 334, Laborers Int'l Union of N. Am.*, 481 F.3d 875, 878–79 (6th Cir. 2007). Under that deferential standard, we must "uphold the NLRB's factual determinations if they are supported by such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id.* at 879 (citation and internal quotation marks omitted), even if "we may have reached a different conclusion had the matter been before us de novo," *Frenchtown Acquisition Co. v. NLRB*, 683 F.3d 298, 304 (6th Cir. 2012). When credibility is at issue, our review is even more deferential: "We will overturn [credibility] determinations only if they overstep the bounds of reason" or "are inherently unreasonable or self-contradictory." *Caterpillar Logistics, Inc. v. NLRB*, 835 F.3d 536, 542 (6th Cir. 2016) (citations omitted).

### B.     The *Wright Line* Framework

We analyze claims of discrimination in violation of the NLRA under the burden-shifting framework articulated in *In re Wright Line*, 251 N.L.R.B. 1083 (1980), and adopted by the Supreme Court in *NLRB v. Transportation Management Corp.*, 462 U.S. 393 (1983). *See FiveCAP, Inc. v. NLRB*, 294 F.3d 768, 777 (6th Cir. 2002).[1] To establish a prima facie case of

---

[1] The Supreme Court subsequently overruled a footnote in *Transportation Management* that interpreted a provision of the Administrative Procedure Act (APA). *See Dir. v. Greenwich Collieries*, 512 U.S. 267, 277–78 (1994). In so doing, the Court left intact the holding of *Transportation Management*, explaining that the *Wright Line* test was consistent with the APA "because the NLRB first required the employee to persuade it that antiunion sentiment

discrimination under *Wright Line*, "the General Counsel must demonstrate that (1) the employee was engaged in protected activity; (2) that the employer knew of the employee's protected activity; and (3) that the employer acted as it did on the basis of anti-union animus." *Id.*; *see also Conley v. NLRB*, 520 F.3d 629, 642 (6th Cir. 2008) (per curiam).[2] Before the holiday at issue, Froslear and Luehrmann had been present at a Board hearing where Rottinghouse testified. Airgas therefore does not dispute that the first two factors are satisfied here. We therefore focus on the third factor, animus.

Animus may be "inferred from circumstantial as well as direct evidence." *W.F. Bolin Co. v. NLRB*, 70 F.3d 863, 871 (6th Cir. 1995). Direct evidence, such as an employer's announcement of "an intent to discharge or otherwise retaliate against an employee for engaging in protected activity," is "especially persuasive." *Turnbull Cone Baking Co. v. NLRB*, 778 F.2d 292, 297 (6th Cir. 1985) (per curiam). But such direct statements are not required. Animus may be inferred from a variety of purely circumstantial factors, including:

> the company's expressed hostility towards unionization combined with knowledge of the employees' union activities; inconsistencies between the proffered reason for [the employment action] and other actions of the employer; disparate treatment of certain employees compared to other employees with similar work records or offenses; a company's deviation from past practices in implementing the [action]; and proximity in time between the employees' union activities and [the action].

*FiveCAP*, 294 F.3d at 778 (quoting *W.F. Bolin*, 70 F.3d at 871).

---

contributed to the employer's decision [and o]nly then did the NLRB place the burden of persuasion on the employer as to its affirmative defense." *Id.* at 278; *see also Arrow Elec. Co. v. NLRB*, 155 F.3d 762, 766 & n.5 (6th Cir. 1998).

[2] Airgas argues that the prima facie case of discrimination under *Wright Line* includes a fourth factor, "a link, or nexus, between the employees' protected activity and the adverse employment action." *Newcor Bay City Div. of Newcor, Inc.*, 351 N.L.R.B. 1034, 1036 (2007). But in the very case Airgas cites, in which an ALJ referred to four factors, the Board corrected the mistake, restating the prima facie case under *Wright Line* with the standard three factors. *Id.* at 1034 n.4. Since *Newcor* was decided, we have repeatedly and consistently described the prima facie case as containing only three factors. *See, e.g.*, *McKinney ex rel. NLRB v. Ozburn-Hessey Logistics, LLC*, 875 F.3d 333, 340 (6th Cir. 2017); *NLRB v. Jag Healthcare, Inc.*, 665 F. App'x 443, 453 (6th Cir. 2016); *Conley v. NLRB*, 520 F.3d 629, 642 (6th Cir. 2008).

If the General Counsel establishes a prima facie case under *Wright Line*'s three-prong test, "the burden shifts to the employer to prove by a preponderance of the evidence that the employee would have been [subject to the employment action] for permissible reasons even if he had not been involved in activity protected by the [NLRA]." *NLRB v. Overseas Motor, Inc.*, 721 F.2d 570, 571 (6th Cir. 1983) (citing *Transp. Mgmt. Corp.*, 462 U.S. 393). If, however, "the employer's proffered justification for the decision is determined to be pretextual, the Board is not obligated to consider whether the employer would have taken the same decision regardless of the employee's union activity." *Ctr. Constr. Co. v. NLRB*, 482 F.3d 425, 435–36 (6th Cir. 2007).

### 1.    Evidence of Animus in the Prima Facie Case

The General Counsel presented direct evidence of animus in the form of two statements by Froslear, the senior Airgas manager who oversees the Cincinnati plant. In April 2015, more than a year before the disputed Thanksgiving holiday, Froslear announced that, due to the filing of NLRB charges, employees would now receive write-ups instead of verbal warnings for certain minor infractions. Second, approximately six weeks after the disputed holiday, when Rottinghouse asked why he always received write-ups instead of verbal warnings, Froslear responded, "it's not like you've ever come and talked to us before you filed all these NLRB charges."

Airgas primarily argues that these statements are irrelevant because Froslear was not the manager responsible for the holiday pay determination. (Managing payroll is usually one of Luehrmann's duties, not Froslear's.) This argument ignores record evidence demonstrating that Froslear was intimately involved in Airgas's ratification of the pay determination. Immediately after Rottinghouse learned that he had not been paid for the holiday, he spoke to Froslear about the problem—and Froslear already knew what had happened and why. Then, at a follow-up meeting a few days later, Froslear personally explained why Airgas refused to pay Rottinghouse for the holiday.

Even if Froslear had not been personally involved, we could still consider these statements that he made in the presence of lower management representatives, without contradiction or repudiation from other Airgas representatives then or since, and—in the case of the April 2015 comment—on behalf of corporate headquarters. In the labor context, "it is eminently reasonable to assume that high-level corporate managers speak on behalf of the company when they express anti-union animus." *NLRB v. RELCO Locomotives, Inc.*, 734 F.3d 764, 782 (8th Cir. 2013) (quoting *Parsippany Hotel Mgmt. Co. v. NLRB*, 99 F.3d 413, 423 (D.C. Cir. 1996)). Froslear's statements expressly linked management's escalation in discipline to an employee's decision to file charges before the NLRB—in one case, Airgas abolished verbal warnings for a class of violations, and in the other, it chose to impose written discipline instead of a verbal warning. Airgas does not dispute that Froslear made these statements, or that he is a high-level manager capable of speaking on behalf of the company. Both statements are therefore highly relevant in determining whether the Board had substantial evidence to find that Airgas acted out of animus.

Airgas relies on *In re Sysco Food Services of Cleveland*, 347 N.L.R.B. 1024 (2006), to argue that the statements merely evidence confusion or frustration. In *Sysco*, the Board adopted the ALJ's determination that certain employer statements—such as "if you're filing all these grievances and you're so unhappy here why don't you find work somewhere else"—were evidence of anti-union animus. *Id.* at 1026, 1035. Those problematic statements, however, were distinguished from "shop talk"—such as "not another one" and "oh geez what did I do now"— that did not add to the General Counsel's case. *Id.* at 1035 n.26 (brackets omitted). Froslear's statements are not the unconsidered outbursts of a manager taken by surprise by a new complaint. The 2017 comment justifies disciplining Rottinghouse more harshly by referring to his past NLRB charges. And in the 2015 meeting, Froslear eliminated a milder category of discipline at the

request of corporate headquarters and in response to NLRB charges. This is precisely what the Act forbids when it disallows "discriminat[ing] against an employee because he has filed charges." 29 U.S.C. § 158(a)(4).

Finally, Airgas argues in passing that the April 2015 statement should be discounted because it preceded the Thanksgiving holiday by nearly a year and a half. These two discriminatory comments bookend the holiday at issue, with one occurring well before Thanksgiving 2016 and the other shortly after. The Board could reasonably conclude that, rather than dispelling the inference of animus, the passage of time indicates that Froslear—and therefore Airgas—consistently held this discriminatory point of view for the entire period at issue in this case. *See In re United Parcel Serv.*, 340 N.L.R.B. 776, 777 n.10 (2003) (explaining that a statement made six months before discharge "is not too remote in time because an employer might wait for a pretextual opportunity to discipline an employee" and also relying on statements made one and two years prior "despite the passage of time" because the same supervisor was involved).

In sum, Froslear's statements are direct, relevant evidence that "a reasonable mind might accept as adequate to support a conclusion" that Airgas was motivated by animus. *Local 334*, 481 F.3d at 879 (citation omitted). Because "the NLRB's inference of unlawful motivation in dismissing an employee is entitled to affirmance if it is supported by substantial evidence," *Overseas Motor*, 721 F.2d at 572, we may not disturb the Board's decision that the General Counsel made out a prima facie case of discrimination.

2.     Airgas's Nondiscriminatory Reason

Because substantial evidence supports the Board's decision that Airgas "acted as it did on the basis of anti-union animus," *FiveCAP*, 294 F.3d at 777, the burden shifts to Airgas "to prove that it would have made the same employment decision regardless" of Rottinghouse's protected activity. *Ctr. Constr. Co.*, 482 F.3d at 435. Airgas contends that Rottinghouse was not paid for

the Thanksgiving holiday because, under the CBA, an employee may only receive pay for scheduled holidays if he "work[s] the regularly scheduled work day[s] that immediately precede and follow the holiday, except in cases of proven illness or injury substantiated by a doctor's statement." According to Airgas, Rottinghouse was ineligible for holiday pay because he took a personal day on the Wednesday before Thanksgiving without providing a doctor's note. The General Counsel contends that this reason is pretextual because other employees who took personal days adjacent to holidays did receive holiday pay.

Compliance with a CBA could be a valid, nondiscriminatory reason for taking an employment action. *See, e.g.*, *Stanley v. BP Prods. N. Am.*, No. 18-3303, --- F. App'x ---, 2018 U.S. App. LEXIS 34073, at *13 (6th Cir. Dec. 4, 2018) ("[The employer's] adherence to the requirements laid out in the CBA tends to show that its reasons for not returning [the employee] to work were not a pretext for disability discrimination."). It is undisputed, however, that it was Airgas's practice to recognize an exception to the language of the CBA. Below, Airgas stipulated that "a scheduled personal day does not result in the loss of holiday pay"—even though scheduled personal days are not mentioned in the portion of the CBA governing holiday pay. The General Counsel argues that the in-practice exception actually covered *any* paid personal day, as long as the employee notified Airgas at least an hour before the start of the work day. Airgas disagrees, arguing the exception has never applied to unscheduled personal days.

The Board was therefore called upon to resolve a factual dispute about the scope of the in-practice exception to the CBA. The ALJ determined that the distinction between scheduled and unscheduled personal days was pretextual; the Board likewise found "no support" for the distinction.

Rottinghouse testified that though Airgas has sometimes permitted employees to schedule personal days in advance, a company vice president told employees that "vacation days are over here, personal days are over here. Completely separate. These you schedule. These you don't." That delineated approach, with scheduled vacation days and unscheduled personal days, matches the text of the CBA. According to the CBA, "an employee must call in at least one hour prior to the start of his shift" to use a personal day, while "vacation days must be scheduled in advance." The decision of the Board and the ALJ to discredit Airgas's contradictory testimony about scheduled personal days is therefore supported by evidence in the record and entitled to affirmance. *See Local 334*, 481 F.3d at 879.

Moreover, even assuming that Airgas distinguished between scheduled and unscheduled personal days, other employees who (like Rottinghouse) took unscheduled personal days adjacent to holidays still received holiday pay (unlike Rottinghouse). For example, one employee took an unscheduled personal day on the first working day after New Year's Day in 2016, and Airgas paid him for the holiday. Another employee took an unscheduled personal day the Monday after Thanksgiving 2016, and Airgas paid him for the holiday—the very same holiday for which it refused to pay Rottinghouse. Indeed, the Board concluded that "there is no evidence that prior to this incident [Airgas] had ever denied an employee holiday pay when he or she took a personal day immediately before or after the holiday." Airgas has not identified any counterexample that would disprove that conclusion. The only example Airgas points to is readily distinguishable, as the referenced employee took *unpaid* personal days for the three days before Thanksgiving as well as the Monday after.

There was therefore substantial evidence to support the Board's determination that Airgas's stated nondiscriminatory reason for its actions is pretextual. In light of that determination, the

Board was not obligated to consider the justification any further. *See Ctr. Constr. Co.*, 482 F.3d at 435–36. To the extent the Board did consider the justification, it could reasonably conclude that Airgas's disparate treatment of Rottinghouse as compared to his coworkers only buttressed the conclusion that Airgas refused to pay Rottinghouse for the Thanksgiving holiday because of impermissible animus. *See FiveCAP*, 294 F.3d at 778.

## III.    CONCLUSION

For the foregoing reasons, we **GRANT** the General Counsel's application for enforcement and **DENY** Airgas's petition for review.